UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

IN THE MATTER OF THE ARBITRATION
BETWEEN

WESTCHESTER FIRE INSURANCE
COMPANY, WESTCHESTER SURPLUS LINES
INSURANCE COMPANY AND ILLINOIS
UNION INSURANCE COMPANY,

                        Petitioners,

       -against-

MASSAMONT INSURANCE AGENCY, INC.,

                        Respondent.

------------------------------------------------------------x

Case No. 05 Civ. ___



## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION TO CONFIRM ARBITRATION AWARD

                        O'MELVENY & MYERS LLP
                        Times Square Tower
                        7 Times Square
                        New York, New York  10036
                        Tel: (212) 326-2000
                        Fax: (212) 326-2061

                        Attorneys for Petitioners Westchester Fire
                        Insurance Company, Westchester Surplus
                        Lines Insurance Company, and Illinois
                        Union Insurance Company

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT .............................................................................................................................. 7

    POINT I     THE AWARD IS GOVERNED BY THE FEDERAL
                       ARBITRATION ACT ................................................................................ 7

    POINT II    JURISDICTION AND VENUE ARE PROPER IN THIS COURT .............. 7

        A.     This Court Has Subject Matter Jurisdiction ................................................ 7

        B.     This Court Has Personal Jurisdiction Over Massamont ............................. 7

        C.     Venue in This Court is Appropriate ........................................................... 8

    POINT III   THE AWARD SHOULD BE CONFIRMED ................................................ 8

    POINT IV   PRE-JUDGMENT INTEREST SHOULD BE AWARDED ....................... 10

    POINT V    REASONABLE ATTORNEYS' FEES AND COSTS INCURRED
                       IN THIS PROCEEDING SHOULD BE AWARDED ................................ 11

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

Page

**CASES**

Allied-Bruce Terminix Cos. v. Dobson,
  513 U.S. 265 (1995) ........................................................................................................7

Cent. Valley Typographical Union, No. 46 v. McClatchy Newspapers,
  762 F.2d 741 (9th Cir. 1985) ..........................................................................................8

Coastal Power Intern. Ltd. v. Transcon. Capital Corp.,
  10 F. Supp. 2d 345 (S.D.N.Y. 1998) ............................................................................10

Colavito v. Hockmeyer Equip. Corp.,
  605 F. Supp. 1482 (S.D.N.Y. 1986) ...............................................................................7

Commonwealth Assocs. v. Letsos,
  40 F. Supp. 2d 170 n.42 (S.D.N.Y. 1999) ....................................................................10

Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.,
  529 U.S. 193 (2000) ........................................................................................................8

Florasynth, Inc. v. Pickholz,
  750 F.2d 171 (2d Cir. 1984) ...........................................................................................8

Folkways Music Publishers, Inc. v. Weiss,
  989 F.2d 108 (2d Cir. 1993) ...........................................................................................9

Ottley v. Schwartzberg,
  819 F.2d 373 (2d Cir. 1987) ...........................................................................................9

P.M.I. Trading Ltd. v. Farstad Oil, Inc.,
  No. 00 Civ. 7120, 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) .....................................11

Reed & Martin, Inc. v. Westinghouse Elec. Corp.,
  439 F.2d 1268 (2d Cir. 1971) .........................................................................................7

Reilly v. Metro. Prop. & Liab. Ins. Co.,
  412 Mass. 1006, 588 N.E.2d 628 (1992) .....................................................................10

Sun Ship, Inc. v. Matson Navigation Co.,
  785 F.2d 59 (3d Cir. 1986) ...........................................................................................10

Terwillinger v. Terwillinger,
  206 F.3d 240 (2d Cir. 2000) .........................................................................................10

**STATUTES**

9 U.S.C. § 9 ..................................................................................................................8, 9

28 U.S.C. § 1332(a)(1) ....................................................................................................7

28 U.S.C. § 1391(a) .........................................................................................................8

231 Mass. G.L. Ann. § 6C .............................................................................................10

N.Y. CPLR § 5004 .........................................................................................................10

## PRELIMINARY STATEMENT

This is a proceeding under the Federal Arbitration Act, 9 U.S.C. §§ 1-16, to confirm an arbitration award and to have judgment entered thereon. A panel of three distinguished arbitrators issued a final arbitration award (the "Award") in favor of Petitioners Westchester Fire Insurance Company, Westchester Surplus Lines Insurance Company and Illinois Union Insurance Company (collectively, "Petitioners") and against Respondent Massamont Insurance Agency, Inc. ("Massamont" or "Respondent"). (A copy of the Award, dated April 26, 2005, is attached to the Declaration of Paul R. Koepff, dated May 17, 2005 ("Koepff Declaration") as Exhibit A.)

Petitioners and Respondent entered into an agreement, pursuant to which Petitioners provided coverage for the property and casualty insurance program managed by Respondent. In violation of its contractual commitments, Respondent transferred program business to a rival carrier. Petitioners duly commenced arbitration against Massamont, seeking damages for Respondent's breaches. In the Award, the panel agreed that Massamont had breached its contractual obligations to Petitioners and determined that the Petitioners were entitled to recover $2,600,000 in damages.

Petitioners now seek to confirm the Award pursuant to 9 U.S.C. § 9 and have judgment entered thereon as well as recover prejudgment interest and attorneys' fees and costs incurred in obtaining confirmation of the Award.

### The Parties' Agreement

Massamont serves as managing general agent ("MGA") for a property and casualty insurance program for the New England states (the "Program"). Pursuant to an Agency Agreement dated as of January 1, 2001 (the "Agreement"), Westchester Fire agreed to serve as

property carrier for the Program.[1] (A copy of the Agreement is attached to the Koepff Declaration as Exhibit B.)

Under the Agreement, Massamont was appointed Westchester Fire's exclusive agent for the Program. The Agreement provided:

> COMPANY [Westchester Fire] may terminate this AGREEMENT immediately by written notice to AGENT [Massamont] if any one or more of the following events occur:
>
> . . . .
>
> AGENT assigns, transfers, encumbers or otherwise disposes of this AGREEMENT or any interest in this AGREEMENT or sells, exchanges, transfers, assigns, merges or consolidates the PROGRAM insurance business without giving COMPANY ninety (90) days prior notice thereof.

(Agreement, Section VIII.C.2 at WF003425.)[2]

The Agreement further provided:

> During the term of this Agreement AGENT will not solicit for any other insurance carrier, except COMPANY, the Program business. If COMPANY elects not to write such business, then AGENT is granted the right to submit such business to other insurance companies under the same terms and conditions as presented to COMPANY.

(Id., Section IX.B. of Exhibit A to the Agency Agreement at WF003445.)

In October 2001 the parties amended the Agreement to extend its term to December 31, 2003, and to flatly prohibit Massamont from "shopping" the Program during that term: "[t]he Agreement is subject to AGENT agreeing not to seek another company to write the PROGRAM during this period." (Id., Amendment to Agency Agreement at WF003446.)

---

[1]  Petitioners Westchester Surplus Lines Insurance Company and Illinois Union Insurance Company were later added in order to issue surplus lines policies.

[2]  Documents with pagination prefix "WF" are taken from Petitioners' document production in the arbitration.

Section IV.I. of the Agreement also provided that Program information, including "results, loss and pricing data, underwriting criteria and surveys, loss control information, and other related PROGRAM data" would be kept confidential and not disclosed to any third party without Petitioners' prior written approval. (Agreement, Section IV.I. at WF003430.)

<u>The Parties Agreed To Arbitrate All Disputes</u>

Under the Agreement, the parties agreed to arbitrate all disputes:

> It is understood that this AGREEMENT is made in good faith and should there arise a difference of opinion or of interpretation of this AGREEMENT, which cannot be settled amicably between senior representatives of the COMPANY who are not involved in the day-to-day management of the PROGRAM and AGENT, or any dispute arising from or relating to the performance or breach of this AGREEMENT, such differences, interpretation or disputes shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire meeting in Philadelphia, PA.

(<u>Id.</u>, Section XX.A. at WF003440.)

The parties further agreed that Westchester Fire and Massamont would each select one arbitrator, and the arbitrators would then select an umpire. (<u>Id.</u>, Section XX.B.) The umpire and arbitrators were to be active or retired disinterested officials of insurance or reinsurance companies. (<u>Id.</u>) The parties agreed that any decision by a majority of the arbitrators would be binding:

> The board shall issue its award in writing based on a hearing at which evidence may be introduced without following strict rules of evidence but in which cross-examination and rebuttal shall be allowed. The board shall make its award within sixty (60) days following the termination of the hearing unless the parties consent to an extension. **A decision by the majority of the members of the board shall become binding upon all parties to the proceeding.**

(<u>Id.</u>, Section XX.C. (emphasis added).)

3

Massamont Breached the Agreement

No later than February 2003, Massamont began secret negotiations with a rival carrier, AXIS Specialty U.S. Services, Inc. ("Axis"), to replace Petitioners as the property carrier for the Program. (Koepff Decl. ¶ 10.) In the course of those negotiations, Massamont shared confidential Program information with Axis. (Id.) On June 19, 2003, Massamont and Axis executed a binding letter of intent (the "Letter of Intent"). (A copy of the Letter of Intent is attached to the Koepff Declaration as Exhibit C.)

The Letter of Intent provided that "[e]ffective June 19, 2003, Massamont will be authorized to negotiate, underwrite and accept property insurance coverages for municipalities and schools" in the six New England states. (Letter of Intent at 557.)[3] The Letter of Intent also provided that:

> All new and renewal accounts for business covered by this Letter and located in the states of Massachusetts and Rhode Island that will have a policy effective date on or after 7/1/03 and where a quote has yet to be released will be quoted with and underwritten by Sheffield Insurance Company [an Axis affiliate].

(Id. at 558.) Where Massamont had already quoted on behalf of Westchester Fire, the Letter of Intent further required Massamont to make a good faith effort to quote on behalf of Sheffield "as a replacement to the existing quote." (Id.) Massamont immediately began placing accounts with Axis, even before Massamont revealed its agreement with Axis to Petitioners. (Koepff Decl. ¶ 11.)

On June 30, 2003, Massamont finally informed Petitioners of the Axis deal. (Id. ¶ 12.) Petitioners promptly demanded an explanation. The parties had several calls, including a conference call that included Schenck and a senior Westchester Fire executive, Robert Gaffney.

---

[3] Documents with no pagination prefixes are taken from Massamont's document production in the arbitration.

(Id.) These discussions proved fruitless. By letter dated July 9, 2003, Westchester Fire advised Massamont that Westchester Fire was terminating the Agreement, effective immediately. (A copy of the letter is attached to the Koepff Declaration as Exhibit D.)

The Arbitration Proceeding

On October 23, 2003, Petitioners notified Massamont that Petitioners were commencing arbitration in accordance with Section XX of the Agreement in order to seek damages for Massamont's breaches, including:

transferring Program business to a rival carrier, in violation of the Agreement's exclusivity provisions, and

sharing confidential Program information with a third party—indeed, a carrier in direct competition with Petitioners—without Petitioners' consent.

(A copy of the arbitration demand is attached to the Koepff Declaration as Exhibit E.) Massamont later counterclaimed for amounts allegedly owing under a profit-sharing agreement between the parties. (Koepff Decl. ¶ 13.)

As of March 22, 2004, the parties had constituted the Panel, consisting of two arbitrators and an umpire. In accordance with the Agreement, all members of the Panel had extensive experience with insurance. (See Agreement, Section XX.B.) The two party-appointed arbitrators were Ronald Jacks, Esq., former General Counsel of the CNA Insurance Companies and retired Senior Partner at Mayer, Brown, Rowe & Maw LLP, and William F. Hofmann, III, Executive Vice President and Treasurer of the Provider Insurance Group and former president of the Independent Insurance Agents of America. (Koepff Decl. ¶ 14.) The party-appointed arbitrators agreed to name Andrew I. Douglass, Esq., a partner with Morrison Mahoney LLP and formerly Executive Vice President and General Counsel for the St. Paul Companies, Inc., as umpire. (Id.) Thereafter, the Panel approved a timetable for the arbitration that included the

following:

exchange of documents;

depositions of fact witnesses and experts on each side; and

submission of pre-hearing memoranda with supporting documentary evidence and expert reports.

The parties then presented four days of fact and expert testimony on November 16–19, 2004 in New York.[4] (Id. ¶ 15.) In order to permit each party to complete the presentation of its case, the Panel agreed to hear an additional two days of rebuttal testimony on December 13–14, 2004 in Boston. At the Panel's request, the parties submitted post-hearing briefs on January 24, 2005 and reply briefs on February 8, 2005.

The Final Arbitration Award

The Panel issued its final Award dated April 26, 2005. In the Award, the Panel:

    a. unanimously determined that Massamont breached the Agreement;

    b. found by a majority that a technical breach of the profit-sharing agreement by Petitioners "may have occurred," but that a net award covering both Massamont's breach of the Agreement and Petitioners' possible breach of the profit-sharing agreement was appropriate;

    c. awarded $2,600,000 in damages to Westchester Fire; and

    d. determined by majority vote that an award of attorneys' fees to the prevailing party would not be appropriate.

(See Award.)

---

[4] While the Agreement's arbitration clause provides that the situs of the arbitration is Philadelphia, Pennsylvania, the parties and the Panel agreed to hold hearings in New York (where Petitioners' counsel's offices were located) and Boston (where Respondent's and respondent's counsel's principal offices were located). (Koepff Decl. ¶ 14.)

## ARGUMENT

### POINT I
### THE AWARD IS GOVERNED BY THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") governs the Award because the performance and breach of the Agreement involved interstate commerce. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 268 (1995) (holding that the FAA extends to all arbitration agreements affecting interstate commerce). The Agreement concerned the purchase and sale of insurance in the New England states and governed the relationship between Petitioners, which are New York, Georgia, and Illinois corporations, respectively, and Respondent, a Massachusetts corporation. (See Agreement at WF003425.)

### POINT II
### JURISDICTION AND VENUE ARE PROPER IN THIS COURT

A.  This Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this proceeding to confirm the Award against Massamont pursuant to 28 U.S.C. § 1332(a)(1), because this action is between citizens of different states and the amount in controversy exceeds $75,000. See, e.g., Reed & Martin, Inc. v. Westinghouse Elec. Corp., 439 F.2d 1268, 1275-76 (2d Cir. 1971).

B.  This Court Has Personal Jurisdiction Over Massamont

This Court has personal jurisdiction over Massamont because Massamont agreed to participate in arbitral proceedings that included four days of evidentiary hearings in New York. See Colavito v. Hockmeyer Equip. Corp., 605 F. Supp. 1482, 1486 (S.D.N.Y. 1986) ("Hockmeyer participated fully in arbitration proceedings conducted in within this district, and therefore may be deemed to have 'implicitly agreed' to the exercise of this Court's subject matter jurisdiction pursuant to § 9 of the Arbitration Act."); Reed & Martin, supra, 439 F.2d at 1276-77

("Since the arbitration was lawfully held in New York City, the District Court in that district had jurisdiction to confirm the award.").

C.    <u>Venue in This Court is Appropriate</u>

The Supreme Court has held that venue under the FAA may appropriately be laid under either the general venue statute, 28 U.S.C. § 1391(a), or the FAA itself. <u>Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.</u>, 529 U.S. 193, 195 (2000). In this proceeding, venue is appropriately laid in this district under either statute.

The general venue statute provides that a civil action to confirm an award may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a). Here, a substantial part of the events giving rise to this proceeding occurred in New York. The Award that Petitioners seek to confirm was made after four days of fact and expert testimony in New York (as well as two days of rebuttal testimony in Boston). (Koepff Decl. ¶ 15.)

Venue is also appropriate under the Federal Arbitration Act because New York was the place where the award was made. <i>See</i> 9 U.S.C. § 9 (application for confirmation "may be made to the Unites States court in and for the district within which such award was made.") Under the FAA, an award is deemed to be "made" in the district where the arbitration hearing takes place. <u>See</u>, <i>e.g.</i>, <u>Cent. Valley Typographical Union, No. 46 v. McClatchy Newspapers</u>, 762 F.2d 741, 744 (9th Cir. 1985) (award was made in the district where arbitration hearings were held, not where arbitrator wrote opinion or location from which he mailed award).

<u>POINT III</u>
<u>THE AWARD SHOULD BE CONFIRMED</u>

Under the FAA, confirmation of an arbitral award is a summary proceeding to make the award a judgment of the court. <u>Florasynth, Inc. v. Pickholz</u>, 750 F.2d 171, 176 (2d Cir. 1984)

8

("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court"). Accordingly, arbitration awards are subject to very limited review in order to serve arbitration's objective of resolving disputes efficiently and with limited expense. See Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."); Nat'l Bulk Carriers, Inc. v. Princess Mgmt. Co., 597 F.2d 819, 825 (2d Cir. 1979) ("Arbitration cannot achieve the savings in time and money for which it is justly renowned if it becomes merely the first step in lengthy litigation.").

A federal court "*must*" confirm arbitral awards subject to the FAA unless one of the narrow exceptions set forth in Sections 10 and 11 of the FAA applies. 9 U.S.C. § 9 (emphasis added); see Ottley v. Schwartzberg, 819 F.2d 373, 375 (2d Cir. 1987). None of these exceptions apply here.

Quite simply, there exists no ground for refusing confirmation of the Award. The parties agreed to arbitrate "any dispute arising from or relating to the performance or breach of this AGREEMENT[.]" (Agreement at WF003440.) The Panel was duly constituted from persons with extensive experience in the insurance business. (Koepff Decl. ¶ 14.) The parties agreed to a procedural timetable for the arbitration and conducted extensive discovery, including exchange of documents and fact and expert depositions. (Id.) The parties submitted to the Panel pre-hearing memoranda including documentary evidence and written testimony in support of their claims and defenses. (Id.) The Panel held six days of evidentiary hearings, including four days of fact and expert testimony in New York and two days of rebuttal testimony in Boston. (Id.) The parties submitted post-hearing memoranda. (Id.) Based on the foregoing, the Panel issued

9

an Award addressing all the parties' claims. (See Award.) Pursuant to the parties' Agreement, the Award is "binding upon all parties to the proceeding." (Agreement, Section XX.C. at WF003440.) Accordingly, the Award should be confirmed and judgment should be entered thereon in favor of Petitioners.

## POINT IV
## PRE-JUDGMENT INTEREST SHOULD BE AWARDED

Under Pennsylvania state law, prejudgment interest in contract actions is awarded at the statutory rate of six percent. Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986), citing 41 Pa. Stat. Ann. § 202. Pennsylvania state law governs because the Agreement contains a choice of law clause stating that the Agreement shall be governed by Pennsylvania law.[5] (Agreement, Section XXII at WF003441.) The Second Circuit has held that, in cases arising under the FAA, where the parties specify the application of a particular state's law, that law determines both pre- and post-judgment interest. Terwillinger v. Terwillinger, 206 F.3d 240, 249 (2d Cir. 2000). Under Pennsylvania law, the period for which pre-judgment interest is awarded runs from the date of the award to the date the court enters judgment. Sun Ship, 785 F.2d at 63. Accordingly, the Court should award prejudgment interest running from the date of the Award, April 26, 2005, until the date judgment is entered.

---

[5] Petitioners would also be entitled to prejudgment interest under New York or Massachusetts law, albeit at a higher rate. New York courts normally award prejudgment interest from the date of the award. Terwillinger, 206 F.3d at 249; Commonwealth Assocs. v. Letsos, 40 F. Supp. 2d 170, 177 n.42 (S.D.N.Y. 1999); Coastal Power Intern. Ltd. v. Transcon. Capital Corp., 10 F. Supp. 2d 345, 371 (S.D.N.Y. 1998). The New York statutory rate of interest is nine percent. N.Y. CPLR § 5004. The Massachusetts rule is also to award prejudgment interest beginning from the date of the award. Reilly v. Metro. Prop. & Liab. Ins. Co., 412 Mass. 1006, 1007, 588 N.E.2d 628, 629 (1992). The Massachusetts statutory rate of interest on contract actions is 12 percent. 231 Mass. G.L. Ann. § 6C.

## POINT V
## REASONABLE ATTORNEYS' FEES AND COSTS
## INCURRED IN THIS PROCEEDING SHOULD BE AWARDED

New York courts have recognized, specifically in the context of the confirmation of arbitral awards, that when the party contesting confirmation of the award has no legitimate basis to challenge the award, attorneys' fees and costs incurred in the course of obtaining confirmation may properly be awarded. See P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00 Civ. 7120, 2001 WL 38282, *3 (S.D.N.Y. Jan. 16, 2001) (costs and attorneys' fees awarded).[6] Here, Respondent has no legitimate basis upon which to challenge the Award. The Award resulted from a process in which the parties were given ample scope to prove their claims and defenses. Moreover, the Agreement provides that the decision of the Panel would be "binding." (Agreement, Section XX.C. at WF003440.) Accordingly, Petitioners are entitled to reimbursement for the attorneys' fees and costs incurred in confirming the Award.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant an order (i) confirming the Award in all respects and directing that judgment be entered in favor of Petitioners and against Respondent in accordance with the Award, (ii) granting pre-judgment interest on the Award from April 26, 2005 to the date of judgment at the rate of six percent per annum in accordance with Pennsylvania law, and (iii) granting Petitioners reasonable attorneys' fees and expenses incurred in this confirmation proceeding, and (iv) granting such other and further relief as may be just and appropriate.

---

[6] A copy of this decision is attached to the Koepff Declaration as Exhibit G.

Dated: New York, New York
      May 17, 2005

                                      Respectfully submitted,

                                      O'MELVENY & MYERS LLP

                                      By: _____
                                          Paul R. Koepff (PK 8452)
                                          Claudia Ray (CR 4132)
                                          Scott D. Thomson (ST 6136)

                                      Times Square Tower
                                      7 Times Square
                                      New York, New York 10036

                                      Telephone:  212-326-2000
                                      Facsimile:   212-326-2061
                                      E-mail:      pkoepff@omm.com
                                                        cray@omm.com
                                                         sthomson@omm.com

                                      Attorneys for Westchester Fire Insurance
                                      Company, Westchester Surplus Lines
                                      Insurance Company, and Illinois Union
                                      Insurance Company